IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHARI SHARP,                             )<br>                                                    )<br>            Petitioner,                      )     Case No. CV  08-282-CWD<br>                                                    )<br>v.                                                )     **MEMORANDUM DECISION**<br>                                                    )     **AND ORDER**<br>MICHAEL J. ASTRUE,                )<br>Commissioner of Social Security  )<br>Administration,                              )<br>                                                    )<br>            Respondent.                  )<br>_____) | |

## Introduction

Currently pending before the Court for consideration is the Petition for Review (Docket No. 1) of Respondent's denial of social security benefits, filed by Petitioner Shari Sharp ("Petitioner") on July 8, 2008. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record ("AR"). For the reasons that follow, the Court will affirm the decision of the Commissioner.

**I.
Procedural and Factual History**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on September 13, 2005. This application was denied initially and on reconsideration, and a hearing was held on September 10, 2007, before Administrative Law

**Memorandum Decision and Order - Page 1**

Judge ("ALJ") Robert C. Tronvig, Jr.  ALJ Tronvig issued a decision finding Petitioner not disabled on December 20, 2007, and Petitioner timely requested review by the Appeals Council, which denied her request for review on May 18, 2008.  Petitioner appealed this final decision to the Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 43 years of age.  She has completed fourteen years of education including two years at the College of Idaho, and her past relevant work includes work in retail stores and restaurants.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  ALJ Tronvig found Petitioner had not engaged in substantial gainful activity since her alleged onset date.  At step two, it must be determined whether claimant suffers from a severe impairment.  ALJ Tronvig found Petitioner's chronic right leg pain and swelling status-post displaced right distal fibula fracture; obesity; diabetes; borderline personality disorder; and posttraumatic stress disorder "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment.  ALJ Tronvig found that Petitioner's impairments did not meet or equal the criteria for the listed impairments.  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  ALJ Tronvig found Petitioner was not able to perform her past relevant work as a retail store worker

**Memorandum Decision and Order - Page 2**

or a restaurant worker. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. At step five, ALJ Tronvig found that Petitioner could perform the exertional demands of a full range of light work and the mental demands of unskilled work.

## III.
## Standard of Review

Petitioner bears the burden of showing that disability benefits are proper because of an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402

U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports a petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Id.* It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision. The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints by a petitioner but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**IV.
Discussion**

As her challenge to the Commissioner's denial of benefits, Petitioner contends ALJ

Tronvig erred by not providing clear and convincing reasons in his finding that Petitioner's testimony was not credible, by not providing specific reasons to discount the testimony of lay testimony supporting Petitioner's contentions, and by not showing there are other jobs available that Petitioner can perform. With respect to her third contention, Petitioner argues that the ALJ's use of the Medical Vocational guidelines was inappropriate due to Petitioner's non-exertional limitations. The Court will address each argument in turn.

### A.  Petitioner's credibility

Petitioner argues that ALJ erred in discrediting Petitioner's testimony regarding her mental health symptoms.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by

substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of a claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and, treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

In this case, the ALJ discredited Petitioner's testimony for the following three reasons: 1) there was evidence of malingering in the record; 2) Petitioner's allegations were not fully supported by the objective medical evidence; and 3) Petitioner's failure to take part in treatment services when offered.

When discrediting Petitioner's testimony, the ALJ relied upon an evaluation of Petitioner completed by Susanne S. Cooper, L.S.M.S., at the Idaho Deparment of Health and Welfare on January 5, 2006 which suggest malingering. Ms. Cooper's evaluation states:

**Memorandum Decision and Order - Page 6**

> Shari presents herself as so depressed that she cannot communicate. She acts as if she is unable to work or function in society. However, she was previously a client and it is known that she is very capable of being social and enjoying herself. She has also been very successful working at both J.C. Penny and Target. Shari wants SSI and has applied for it. She appears to be feigning symptoms in an attempt to qualify for SSI. (AR 225.)

Petitioner argues that Ms. Cooper improperly based her opinion on past behaviors; however, Ms. Cooper also relied upon actions and comments made by Petitioner during her interview. Ms. Cooper noted: "[Petitioner] spoke fewer than twenty words during an hour interview, and preferred to have a friend speak for her, or to nod or shake her head. One of the few times she spoke she asked about having this clinician write a letter to SSI for her." (AR 225.) Further, Ms. Cooper noted that "[Petitioner] has some hallucinations, but refused to give any information about them. It seems doubtful that she truly has hallucinations. This reported symptom seemed to be feigned and she did not seem delusional." (AR 228.)

Additionally, Ms. Cooper noted that Petitioner refused to write answers any answers to questions during the interview, she was non-compliant and seemed to be putting on an act to try and appear very disabled, even coming to the interview in a wheelchair even though the cast from her previously broken foot had been removed. (AR 227-228.) Finally, Ms. Cooper noted that Petitioner was unable to support her previous diagnoses of depression and bipolar disorder by Drs. Jolley and Heidenreich with any description of symptoms. (AR 229.) Thus, the overall the evaluation by Ms. Cooper supported the ALJ's conclusion that Petitioner was malingering. Despite conflicting evidence in the record, the Court will not substitute its judgment for that of the ALJ.

Secondly, the ALJ found that Petitioner's symptoms were not fully supported by the record. In doing so, the ALJ specifically referenced an evaluation by Dr. LoriLee Critchfield on

December 5, 2005, in which Dr. Critchfield concluded:

> [T]his claimant is able to understand and remember an extensive variety of complex instructions.  She currently can understand, remember and carry out an extensive variety of uncomplicated or simple one and two step instructions and seems to possess adequate concentration and attention allowing her to carry out instructions at this level.  I do think, at this time, that she can do complex instructions on a sustained reliable workday or workweek basis, and is competent to carry out uncomplicated, simple instructions on a sustained, reliable, or workweek basis.  Based on her reporting, there is no real reason that would render any difficulty for her in establishing and maintaining appropriate interactions with the public, coworkers, or supervisors. (AR 189.)

Further, Dr. Critchfield concluded that Petitioner's inability to work was most likely due to her broken foot or obesity as opposed to her mental health.  Dr. Critchfield gave Petitioner a GAF score of 60 and 65 over the past year.  (AR 190.)

Dr. Critchfield's assessments are supported by Ms. Cooper's evaluation of June 5, 2006, giving Petitioner a GAF score of 62 with the highest GAF score in the past year of 65.  (AR 256.) These scores are also consistent with earlier evaluations after her first hospitalization for a suicide attempt on June 15, 2004.  Those evaluations found that Petitioner had, at that time, a GAF score of 60 and that her highest GAF score over the past year was 70. (AR 261-263.)

A GAF score of 51-60 is defined as moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers.) American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders Text - Revision at 34, (4th ed. 2000) DSM -IV- TR).  A GAF score of 61-70 is defined as some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household).  *Id.*  GAF scores are properly considered in making credibility determinations.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9 th Cir. 2001).

**Memorandum Decision and Order - Page 8**

Finally, the ALJ references Petitioner's lack of follow up and participation in her treatment options after initial consultations in both 2004 and 2006 with the Department of Health and Welfare for discounting Petitioner's credibility. (AR 232, 251, 326.) Ms. Cooper's note in 2006 reflects: "Shari came in seeking SSI...The only speaking Shari did was to request help with SSI several times.  Shari came in for one session because she was told that she needed to be seen more than just [once] for an assessment in order to give SSI any information... Her case is being closed because she did not want to participate in services.  She did not attempt to work on her issues." (AR 326.) The ALJ is permitted to consider lack of treatment in the credibility determination.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005.)

Based on the foregoing discussion, the Court finds that there is substantial evidence in the record supporting the ALJ's finding with respect to Petitioner's credibility.[1]  Thus, where as in the instant case, the evidence is susceptible to more than one rational interpretation, the Court will not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d at 1098.

**B.      ALJ's Consideration of Lay Witness Testimony**

Petitioner further argues that ALJ Tronvig did not properly consider the letters submitted by her sister Tammy Wagner (AR 140-142, 153-157), step-father Gary Sharp (AR 145), friend Sharon Mulalley (AR 151-152), rehabilitation counselor Chuck Drennan (AR 160, 161), employment specialist Elizabeth Betty (AR 163), and Petitioner's job coach Stephanie Harrison (AR143-144, 146-150, 167).

Lay testimony regarding a claimant's symptoms constitutes competent evidence that an

---

[1] The ALJ made further findings with respect to Petitioner's credibility regarding her physical ailments; however, Petitioner does not address the ALJ's analysis with respect to those findings.  Thus, the Court will not address them herein.

**Memorandum Decision and Order - Page 9**

ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) *citing Nguyen v. Chater*, 100 F.3d 1462, 1467 ( 9th Cir. 1996) *internal citations omitted; Regennitter v. Commissioner of Social Sec. Admin*. 166 F.3d 1294 (9th Cir. 1999.) The ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis*, 236 F.3d at 511 *citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

In the instant case, ALJ Tronvig discredited the lay testimony. He failed to express specific reasons for discrediting each piece of lay testimony; however, as explained in *Lewis*, the ALJ need only express arguably germane reasons for dismissing lay testimony even if the ALJ did not clearly link those reasons to his determination. *Id.* Here, ALJ Tronvig stated that he was unable to fully credit the claimant's allegations, or the other allegations in the record, regarding the severity of her mental impairments or her limitations performing work related mental activities. (AR 21.)

The Court agrees with Respondent that the Court can infer from the ALJ's decision that the ALJ discredited the lay testimony for the same reasons he discredited Petitioner's testimony. As noted in *Lewis*, the ALJ can discredit lay testimony if it conflicts with medical evidence in the record. In this case, as discussed above, the lay testimony with respect to Petitioner's symptoms conflicts with medical evidence in the record regarding Petitioner's mental limitations, specifically her consistent GAF scores. Thus, the ALJ did not err in discrediting the lay testimony on this basis. Because the ALJ's decision to discredit the lay testimony was based on substantial evidence in the record, the Court will uphold the conclusion of the ALJ.

**Memorandum Decision and Order - Page 10**

C.     **Use of the Medical-Vocational Guidelines**

Finally, Petitioner argues that the ALJ erred at step five by using the Medical-Vocational guidelines or grids to determine whether she was disabled, instead of seeking further testimony from the vocational expert.

The ALJ can utilize the grids without vocational expert testimony when a non-exertional limitation is present, because the grids "provide for the evaluation of claimants asserting both exertional and non-exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) *quoting Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986). However, the grids may not be applied "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Id. quoting Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). However, the determination of severity at step two does not mandate for determination of severity at step five or vocational expert testimony. The Court of Appeals for the Ninth Circuit has rejected this proposition in *Hoopai* stating, "satisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Id.* at 1076.

Petitioner argues that the grids do not accurately and completely describe her non-exertional limitations and, therefore, the ALJ erred in using them exclusively to determine whether Petitioner could perform jobs available in the national economy. Specifically, Petitioner argues that the ALJ failed to take into account the panic attacks Petitioner experiences when cornered including freezing in place, being unable to speak, or having to flee to a safety zone set

up for her during her employment at J.C. Penny.  The Court disagrees.  As previously discussed, the ALJ did not err by discrediting Petitioner's testimony or the lay testimony offered in support of Petitioner's application.  Therefore, the ALJ did not err in his conclusion based on those determinations that Petitioner has only moderate limitations performing activities of daily living; mild to moderate limitations maintaining her social functioning; mild to moderate limitations maintaining her concentration, persistence or pace; a single episode of decompensation; and the finding that she has the capacity to perform the mental demands of unskilled work.[2]  (AR 22.)  Therefore, the ALJ's conclusion that the extent of Petitioner's non-exertional and exertional limitations were accounted for in the grids was based on substantial evidence and the ALJ did not err in relying upon them when making his determination that she was not disabled.

## V.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

---

[2] The ability to perform the mental demands of unskilled work includes the ability (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. Social Security Ruling (SSR) 85-15 available at 1985 WL 56857.

**Memorandum Decision and Order - Page 12**

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the Petition for Review be **DISMISSED**.



DATED: September 30, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge